IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DR. ALBERT WHITE, JR., et. al.** ] | |
| ] | |
|     **Plaintiffs,** ] | |
| ] | |
| v. ] | |
| ] | CV-10-BE-0166-S |
| **BLUE CROSS AND BLUE SHIELD OF** ] | |
| **ALABAMA, et. al.,** ] | |
| ] | |
|     **Defendants** ] | |
| ] | |
| ] | |

**MEMORANDUM OPINION**

    This matter is before the court on "Motion to Dismiss" filed by Blue Cross and Blue Shield of Alabama ("Blue Cross"); Cahaba Government Benefits Administrators, LLC ("Cahaba GBA"); and Cahaba Safeguard Administrators, LLC ("Cahaba Safeguard") (collectively, the "Carrier Defendants").  Defendant Blue Cross and Blue Shield Association ("the Association") joined in the Carrier Defendants' motion (doc. 12).  Defendants assert that the court lacks subject matter jurisdiction over all counts of the Complaint, that Defendants are entitled to sovereign immunity, and that the Complaint otherwise fails to state a claim upon which relief can be granted.  Plaintiffs have responded (doc. 14), and Defendants have replied (doc. 16); accordingly, this matter has been thoroughly briefed.  For the reasons stated in this Memorandum Opinion, the court finds that the motion is due to be GRANTED.

**I.  STATEMENT OF FACTS**

    Plaintiffs are Dr. Albert White; Medical Associates of West Alabama, P.C. ("Medical

1

Associates"), a Medicare provider corporation where Dr. White is an associate; and Anna White, Dr. White's wife and the practice administrator of Medical Associates.  In 1999, Medical Associates submitted certain Medicare claims as Medicare provider to Blue Cross, which was the Medicare carrier for the State of Alabama pursuant to a contract with Health Care Financing Administration ("HCFA"), the predecessor to the Centers for Medicare & Medicaid Services ("CMS").  As is its practice, Blue Cross paid the claims, or a portion of them, immediately upon receipt, subject to post-payment audits to verify that payments were proper.

Ms. White sent a letter on behalf of Medical Associates to the Alabama State Legislature, complaining that Blue Cross acted arbitrarily and capriciously in refusing to reimburse medical providers for legitimate medical services.  Plaintiffs claim that within six months of that letter, Cahaba GBA[1], a division of Blue Cross, initiated a fraudulent or grossly negligent audit of Plaintiffs with the intent to drive Plaintiffs out of business.  As a result of the audit, Carrier Defendants determined that an actual overpayment of $89,850 had been made to Plaintiffs for 30 intended Medicare beneficiaries, with a projected overpayment of $57,975.20, all regarding services Plaintiffs billed to Medicare from January 1, 1999 to June 30, 1999.  Plaintiffs paid back the projected overpayment amount under protest in May of 2004 and notified Blue Cross by a letter dated April 5, 2004 of their intention to appeal the disputed overpayment.

On June 23, 2004, the Fair Hearing Officer held a hearing and overruled and reversed

---

[1] At the time of the post-payment audit alleged in the Complaint, Defendant Cahaba Safeguard did not exist, and Defendant Cahaba GBA was an operating division of Blue Cross that performed, among other functions, the claims processing and the post-claims processing auditing activities under the contract with HCFA.  Subsequently, Blue Cross created Cahaba Safeguard as an independent wholly-owned subsidiary to perform such functions as the post-claims processing auditing activities.

Blue Cross's decision on twelve of the thirteen claims brought pursuant to procedure code 99375. In light of this finding, the actual overpayment amount was reduced to $2,995.95 with a reduced projected overpayment of $17,048,80.

Plaintiff subsequently requested and received a hearing before an Administrative Law Judge, which was held on March 22, 2005. The ALJ's decision, entered on July 22, 2005, resulted in a reduction of Plaintiffs' actual overpayment amount to $596.10 and their projected overpayment amount to $3,014.87.

On September 22, 2005, Plaintiffs filed a timely appeal to the Department Appeals Board, Medicare Appeal Council. Almost two years later, on September 20, 2007, Plaintiffs submitted a Motion to Reopen Hearing Decision, alleging breach of contract, fraud, tort of outrage, loss of consortium, violation of constitutional rights to equal protection and due process, and violation of civil rights. On January 3, 2008, Plaintiffs submitted an Amended Motion to Reopen Hearing Decision to add a claim for RICO violations. The claims listed in these two motions mirror the labels of the counts in this suit's Complaint.[2]

---

[2] The Complaint indicates that Plaintiffs pursued these claims in the administrative process, received rulings on them, and appealed those rulings. In ¶ 21 of the Complaint, Plaintiffs state that in his July 22, 2005 decision, "the Administrative Law Judge did not rule on Plaintiff's claims of contract, fraud, tort of outrage (intentional infliction of emotional distress), loss of consortium, constitutional, civil rights, and RICO violations." Presumably, the reason that he did not do so was that these claims were not before him; subsequent paragraphs of the Complaint indicate that Plaintiffs did not make such allegations until 2007 and 2008, when they filed motions to reopen the hearing decision to add those claims. *See* Compl., doc.1, ¶ 22, at 7. Although the Complaint does not refer to specific rulings on these motions, it does indicate that the hearing was reopened and that Plaintiffs received unfavorable rulings on these claims:  in ¶ 23, the Complaint states that the Medicare Appeals Council "concurred with the . . . Administrative Law Judge" regarding the additional claims and found that they "are appropriately addressed in the Medicare appeals process . . . ." (Compl., doc. 1, ¶ 23, at 7). Ultimately, the Appeals Council <u>denied</u> Plaintiffs' request for review of the ruling(s) on these additional claims. (Compl., doc. 1, ¶ 26, at 8).

On May 19, 2008, the Medicare Appeals Council vacated the ALJ's decision regarding the appeal of the overpayment and remanded that aspect of the case to an ALJ, because the Council was unable to retrieve the administrative record.  The Office of Medicare Hearings and Appeals ("OMHA") was unable to reconstruct the original administrative record, however, so it conducted a telephonic hearing on the matter on January 15, 2009.  As a result of the hearing, the OMHA apparently found in favor of the Plaintiffs regarding the overpayment claims in front of it.

Also on May 19, 2008, the Medicare Appeals Council found *against* Plaintiffs on the subsequently added claims for breach of contract, fraud, loss of consortium, violation of civil rights through racial discrimination, and violation of RICO[3] and indicated that those claims were "appropriately addressed in the Medicare appeals process." (Compl., doc. 1, ¶ 23, at 7).   On May 21, 2009, Plaintiff requested the Medicare Appeals Council to rule on those additional claims.  On November 23, 2009, the Medicare Appeals Council sent a notice to Plaintiffs, stating that it "denied the Plaintiff's request for review of the [additional] claims."  (Compl., doc. 1, ¶ 26, at 8).

Plaintiffs filed the instant case on January 26, 2010, which includes claims for Breach of Contract (Count I); Fraud (Count II); Tort of Outrage (Count III); Loss of Consortium (Count IV); Equal Protection and Due Process Violations (Count V); Racial Discrimination (Count VI); Violation of RICO 18 U.S.C. § 1962(D) by Conspiring to Violate 18 U.S.C. § 1962(C) (Count VII); Violation of 18 U.S.C. § 2 by Seeking to and Aiding and Abetting in the Violation of 18

---

[3] In listing the claims that the Appeals Council found were appropriately addressed in the Medicare appeals process, the Complaint did not specifically include the constitutional claims or the tort outrage claims. (*See* Compl., doc. 1, ¶ 23, at 7). However, the Complaint did previously include those claims as additional claims asserted in the motions to reopen the hearing decision.

U.S.C. § 1962(C) (Count VIII); and Declaratory and Injunctive Relief under 18 U.S.C. § 1964(A). These claims appear to coincide with those that Plaintiffs asserted in their motions when they filed motions to reopen the administrative hearing decision. (Compl., doc. 1, ¶ 22, at 7).

Plaintiffs attached an amended complaint as an exhibit to their responsive brief (doc. 14-1), but have never filed that amended complaint as a pleading.

## II. DISCUSSION

### A. Amended Complaint

To address a 12(b) motion, the court examines the well-pleaded allegations of the complaint. *Ashcroft v. Iqbal* ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009); *Dial v. Healthspring of Ala., Inc.*, 541 F.3d 1044, 1047 (11th Cir. 2008). The court notes that Plaintiffs attached an amended complaint as an exhibit to their responsive brief (doc. 14-1). In their brief, Plaintiffs discuss the amended complaint as if it were filed as a pleading. The court acknowledges that *if Plaintiffs had filed the amended complaint as a pleading* instead of an attachment to a brief, it would have been timely filed pursuant to Rule 15(a)(1)(B), and the court would look to that document to resolve the 12(b) motion. However, Plaintiffs did not do so, and indeed, have not done so. Further, they have filed no subsequent motion to amend the Complaint and rectify the filing error. Accordingly, the court finds that the only pleading Plaintiffs have filed is the original Complaint, and it will proceed to address the Motion to Dismiss by examining the well-pleaded allegations of the *original* Complaint. The court finds that "Plaintiffs' First Amended Complaint" (doc. 14-1), attached to the responsive brief, was never filed as a pleading, and the Amended Complaint and its exhibits (docs. 14-2 & 14-3) are due to

be stricken.

### B.  Motion to Dismiss

Defendants argue that the court should grant their motion pursuant to Rule 12(b)(1); they assert that the court lacks subject matter jurisdiction of this matter because (1) Plaintiffs' claims arise under the Medicare Act, but fail to comply with the Medicare Act's exclusive review provisions; and (2) Defendants are entitled to sovereign immunity.  They also claim that the court should grant their motion pursuant to Rule 12(b)(6) because the Complaint fails to state a claim upon which relief can be granted.

#### 1.  Medicare Act Review

In their responsive brief, Plaintiffs state that they do not seek review of the medicare administrative rulings related to this matter. (Pls.' Resp. Br., doc. 14, at 1-3).  Their insistence that they are not appealing the administrative ruling – because the ruling on the overpayment issue was favorable to them – overlooks the fact that they also reopened the administrative matter to include  the very claims now asserted in this suit.  According to their Complaint, they received an unfavorable ruling as to those additional claims in the administrative case.  The court notes that even if Plaintiffs do not characterize their claims in the instant suit as requesting review of administrative rulings, if the suit is, in essence if not in name, "claims for benefits [or] inextricably intertwined" with what is essentially a claim for Medicare benefits, the court may treat it as such.   *See Am. Acad. of Dermatology v. Dep't of Health & Human Servs.*, 118 F.3d 1495, 1498 (11th Cir. 1997) (citing *Heckler v. Ringer*, 466 U.S.  602, 624 (1984) and also stating that if the suit is "in essence a claim for benefits under the Medicare Act," it may be brought in federal district court only as an appeal from the administrative process, following statutory

appeal requirements).    Plaintiffs' argument that the claims in the instant suit do not arise out of the Medicare Act perplexes the court in light of the fact that they reopened the hearing in the medicare administrative case *precisely to assert them*.   Plaintiffs did pursue the claims through several steps of the  Medicare administrative appeals process and only filed this suit after eventually receiving an unfavorable ruling from the Appeals Council.   In pursuing the claims in the Medicare administrative process, they were acknowledging that the claims were inextricably intertwined with claims for benefits under the Medicare Act and/or did indeed arise under that Act.

Further, the Complaint indicates that the ALJ and the Appeals Council agreed that the Medicare administrative process provided the appropriate forum for these claims.  In the Complaint, Plaintiffs specifically acknowledge the Medicare Appeals Council found that the additional claims  "are appropriately addressed in the Medicare appeals process. . . ." (Compl., doc. 1, ¶ 23, at 7).  That acknowledgment is inconsistent with Plaintiffs' current, curious position that the additional claims are not inextricably intertwined with claims for Medicare benefits and do not arise under the Medicare Act.

Having invoked the Medicare administrative process and received an unfavorable result at the Appeals Council stage of that process, Plaintiffs cannot now successfully take a contrary position regarding the applicability of the Medicare Act, skip the judiciary review process provided for in the Act, and start the process all over again with primary jurisdiction in federal court.  The court finds that this action arises under the Medicare Act, involving claims that are  – at the very least –  inextricably intertwined with claim(s) under the Medicare Act and that are essentially requesting a review of the administrative rulings.

In light of that finding, the court lacks jurisdiction of this case. The Medicare Act "strips federal courts of primary federal-question subject matter jurisdiction over claims that arise under that Act, . . . [and] provides for an administrative hearing before the Secretary of the Department of Health and Human Services [as well as] for judicial review of the Secretary's final decision' in the form of a civil action in federal district court against the Secretary. . . ." *Dial v. Healthspring of Ala., Inc.*, 541 F.3d 1044, 1047-48 (11th Cir. 2008) (internal quotations and citations omitted) (referring to 42 U.S.C. §§ 405(g) and (h)). Section 405(g) provides that the only avenue for judicial review is an appeal of a final administrative ruling, filed in federal district court within a specified number of days after that ruling. Section 405(h) provides that "[n]o findings of fact or decision of the [Secretary of HHS] shall be reviewed by any person, tribunal, or governmental agency except as herein provided." Because "judicial review of the administrative decision ... to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review of all claims arising under the Medicare Act" (*see Dial*, 541 F.3d at 1048), this federal district court can only have jurisdiction of such cases if they are <u>properly appealed from a final</u> administrative ruling. *See* S. Rep. No. 404 (1965), *reprinted in* 1965 U.S.C.C.A.N. 1943, 1995 (Congress "intended that the remedies provided by these review procedures be exclusive."). Further, a suit seeking such an appeal must be filed against the Secretary of the Department of Health and Human Services. *Dial*, 541 F.3d at 1048.

Because the instant suit arises under the Medicare Act, as Plaintiffs acknowledged when they pursued these claims to the Appeals Council in the Medicare administrative process, the next step in the administrative process would have been to file a timely appeal against the Secretary in this court. However, the instant case was not filed against the Secretary, as

8

required. Thus, to the extent that it represents an attempted review of the administrative proceedings, it is not a proper *appeal*, and the court lacks subject matter jurisdiction over it. Further, because it arises under the Medicare Act, that Act strips this court of *primary* federal question jurisdiction over the claims brought as a collateral suit.  Under either theory, the court finds that this action is due to be dismissed for lack of subject matter jurisdiction.

The court notes that the Association joined in the motion to dismiss, but is not named in any count of the original Complaint.  To the extent, if at all, that the Complaint can be read to include the Association, it should be dismissed because the court lacks subject matter jurisdiction over it, as outlined above.  Alternatively, the court finds that the Association is due to be dismissed, because the Complaint does not name it in the text of its counts.

### 2. Sovereign Immunity and Other Alternative Bases for Dismissal

In light of this ruling, the court need not address the alternative bases for dismissal under sovereign immunity or failure to state a claim under Rule 12(b)(6).  The court notes, however, that sovereign immunity would provide an alternative basis for dismissal of some claims, but only to the extent that the government would be required to indemnify Defendants for any recovery against them.

In *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, the Eleventh Circuit discussed the issue of sovereign immunity's application to Medicare fiscal intermediaries and provided direction, albeit in *dicta*, about the parameters of the immunity protection provided to such intermediaries.  116 F.3d 1364, 1382 (11th Cir. 1997).   The Court of Appeals agreed with the plaintiffs' argument that the Medicare fiscal intermediary's entitlement to sovereign immunity was not a blanket one, but was limited to cases in which the government would be required to

indemnify it for any recovery against it.  Noting that the government's contract with the intermediary  would not have required the government to pay it back for damages based on fraudulent conduct under the RICO laws, the court stated that if such claims were for monetary damages and had survived dismissal at earlier stages of the litigation, the intermediary would *not* be entitled to sovereign immunity protection as to those claims.  *Brooks,* 116 F.3d at 1382.

Because Defendants in the instant suit raise the sovereign immunity issue and Plaintiffs assert  RICO claims as well as fraud claims, the court would have expected counsel to point it to that Eleventh Circuit case, but they did not do so.  In any event, Defendants raise sovereign immunity merely as an alternative basis for dismissal.

### III.  CONCLUSION

For the reasons stated above, the court will GRANT the motion by separate Order, and this case is due to be DISMISSED pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

Dated this 12th  day of August, 2010.

/s/ Karon O. Bowdre
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE